PATRICIA RIVET MURRAY, Judge.
 

 |,In this criminal case, the defendant, Egerald Every, appeals his conviction and sentence on a drug-related offense.
 
 [1]
 
 We affirm his conviction, but amend his sixty-year sentence on the cocaine offense to delete the prohibition against probation or parole eligibility and affirm his sentence as amended.
 

 STATEMENT OF THE CASE
 

 On March 27, 2008, the State filed a bill of information charging Mr. Every with possession with intent to distribute marijuana, a violation of La. R.S. 40:966(A)(2); and with possession of between two hundred and four hundred grams of cocaine, a violation of La. R.S. 40:967(F)(l)(b). On April 10, 2008, Mr. Every failed to appear for his arraignment, and a capias was issued for his arrest. On May 30, 2008, he was arrested. On June 4, 2008, he entered a not guilty plea. On July 24, 2008, Mr. Every’s retained counsel filed a motion to withdraw, which was granted. On August 1, 2008, Mr. Every was appointed counsel. On August 20 and 21, 2008, a motions hearing was held. The district court found Improbable cause and denied Mr. Every’s
 
 *414
 
 motions to suppress the evidence and his statement. On October 28, 2008, a jury trial was held. The jury found Mr. Every guilty of possession of marijuana, first offense, and guilty as charged as to count two, possession of between two hundred and four hundred grams of cocaine. The State then filed a multiple bill charging Mr. Every as a quadruple offender under La. R.S. 15:529.1.
 

 On October 29, 2008, a multiple bill hearing was held as to count two, the cocaine offense. On October 30, 2008, the district court found Mr. Every a third felony offender and sentenced him on the cocaine offense to the maximum sentence of sixty years at hard labor without benefit of probation or parole. Additionally, the district court imposed a fine of $100,000 and ordered the money seized from Mr. Every at the time of his arrest ($2,760) be applied to the payment of the fine. On the marijuana offense, the district court sentenced Mr. Every to six months in parish prison and ordered that the sentences were to run concurrently. This appeal followed.
 

 STATEMENT OF THE FACTS
 

 In October 2007, Mr. Every became the target of a narcotics investigation. According to a reliable confidential informant, Mr. Every was selling cocaine from his apartment located at 3517½ Tulane Avenue, making his deliveries using a black Mercedes with a Texas license plate, and storing the bulk of his cocaine at a storage facility on South Carrollton Avenue. Based on this information, a surveillance was conducted of Mr. Every’s apartment. New Orleans Police |sDepartment (“NOPD”) Detective Andrew Roccaforte, who was the lead investigator on this case, received the information from the informant and participated in the surveillance.
 

 The surveillance began on October 31, 2007. On that day at about 1:50 p.m. the officers observed Mr. Every and Rochelle Mathew
 
 [2]
 
 exiting the apartment and getting into a black Mercedes with a Texas license plate. At that point, Detective Roccaforte and several other officers in unmarked vehicles began a mobile surveillance. Mr. Every, who was driving the Mercedes, first dropped Ms. Mathew off at a house on the corner of South Solomon and Iberville Streets. He then proceeded to a storage facility located on South Car-rollton Avenue. After entering the security gate that surrounded the storage facility, Mr. Every entered building number 1100, which contained a number of units. After about five minutes, Mr. Every exited the facility and returned to the Mercedes. Mr. Every then drove to a motel/apartment complex in Jefferson Parish. The officers observed Mr. Every enter the motel parking lot and an unknown black male exit one of the motel rooms and approach the Mercedes. The detectives then observed the unknown male hand Mr. Every some currency in exchange for a small object. Mr. Every then left the motel and returned to his apartment on Tulane Avenue. At that point, the surveillance was ended for the day.
 

 The next day, November 1, 2007, the officers resumed the surveillance. Based on the results of the surveillance, the officers obtained a search warrant for |4Mr. Every’s apartment. On November 2, 2007, a pre-warrant surveillance was set up in front of the apartment. A short time later, Mr. Every exited the apartment and got into the Mercedes with Ms. Mathew. A take-down team, riding in a fully marked police vehicle, followed the Mercedes for a
 
 *415
 
 short distance before stopping it. Sergeant Sandoz, who was a member of the take-down team, advised Mr. Every and Ms. Mathew that they were under investigation. He also advised them of their rights and brought them back to the apartment. They were kept in the police vehicle while the search of the apartment was conducted. At that location, Detective Rome, who was a member of the surveillance team, recovered from Mr. Every’s person keys to the apartment and $760 in cash.
 

 Using the keys Detective Rome confiscated from Mr. Every to open the door, Detective Roccaforte entered the apartment. Inside the apartment, Detective Roccaforte found, in a dresser drawer, a clear plastic bag that held four plastic bags containing a white-like substance that appeared to be cocaine. Also inside the drawer were two bags of a substance that appeared to be marijuana, a digital scale, sandwich baggies, $2,000 in cash, a plate containing residue with a credit card on top, a birth certificate in Mr. Every’s name, rental receipts for the apartment in Mr. Every’s name, and a rental receipt for storage unit number 1129 at the South Carrollton storage facility in Ms. Mathew’s name.
 

 Based upon his findings, Detective Roc-caforte returned to the police vehicle, arrested Mr. Every, and advised him of his
 
 Miranda
 
 rights. After indicating that he understood his rights and being questioned about Unit 1129 at the storage facility, | ¡¡Mr. Every admitted that he had about a quarter kilogram of cocaine stored at the storage facility. Mr. Every also informed Detective Roccaforte that the keys to the storage unit were kept in the console of the Mercedes. After obtaining a search warrant for Unit 1129, Detective Rocca-forte used the keys he found in the console in the Mercedes to enter the storage facility, where he found a black cloth bag containing 366.5 grams of cocaine.
 
 [3]
 

 Criminalist William Giblin, who was declared an expert in the analysis and identification of controlled and dangerous substances, testified that the substances seized tested positive for marijuana and cocaine. He further testified that the cocaine at issue weighed 366.5 grams.
 

 Although Ms. Mathew was the registered owner of the Mercedes and rented the storage unit in which the cocaine was found, she was not charged. The reason she was not charged, but rather released, was because Detective Roccaforte did not see her do anything related to the drug activity.
 
 [4]
 

 ERRORS PATENT
 

 A review of the record shows one errors patent. Neither La. R.S. 40:967 nor La. R.S. 15:529.1 mandates the prohibition against probation or parole that was included in Mr. Every’s sixty-year sentence for the cocaine offense. We, therefore, amend his sixty-year sentence to delete the prohibition against probation or parole as an error patent. La.C.Cr.P. art. 882 (providing that an illegal sentence may be corrected at any time “by an appellate court on review”);
 
 State v. Green,
 
 93-1432
 
 *416
 
 (La.App. 4 Cir. 4/17/96), 673 So.2d 262 (reviewing and amending defendant’s sentence for attempted manslaughter to delete the requirement that sentence be served without benefit of parole, probation, or suspension of sentence as an error patent).
 

 COUNSELED ASSIGNMENTS OF ERROR NUMBERS 1 AND 2
 

 Because Mr. Every’s first two counseled assignments of error both challenge his sentence, we find it appropriate to consider them together. Simply stated, Mr. Every contends that the sixty-year sentence he received is both excessive (Error Number 1) and vindictive (Error Number 2). This court has held that the failure to file a motion to reconsider sentence or to object to the sentence at the time it is imposed precludes a defendant from raising a claim about his sentence on appeal.
 
 State v. Rodriguez,
 
 00-0519 (La.App. 4 Cir. 2/14/01), 781 So.2d 640;
 
 State v. Tyler,
 
 98-1667 (La.App. 4 Cir. 11/24/99), 749 So.2d 767. Although Mr. Every failed to do either, the district court immediately after sentencing him noted an objection, stating: “Objection is noted. All motions for reconsideration of sentence is [ (sic) ] made. It is denied.” After adding the mandatory penalty to the sentence, the district court again noted: “All objections are re-noted as to the sentence originally imposed, including the imposition of the fine of $100,000.”
 

 Under similar circumstances, this court in
 
 State v. Dunbar,
 
 06-1030, p. 3 (La.App. 4 Cir. 3/19/08), 981 So.2d 51, 53, found the district court’s actions in
 
 sua sponte
 
 making an objection for the defendant and denying it served to preserve |7the defendant’s right to raise on appeal the issue of unconstitutional excessiveness. We stated: “[t]he trial court pronounced sentence and immediately noted an objection — obviously, as to the length of the sentence — on behalf of Dunbar, thus preserving his right to raise on appeal the issue of unconstitutional excessiveness.” Likewise, the district court’s actions in this case in twice noting an objection and then denying it were sufficient to preserve Mr. Every’s right on appeal to raise the constitutional sentencing issues of excessiveness and vindictiveness.
 
 [5]
 

 Excessiveness of sentence
 

 Pursuant to La. R.S. 15:529.1, Mr. Every was sentenced as a third-felony offender to sixty years at hard labor. Pursuant to La. R.S. 15:529.1(A)(b)(i), the sixty-year sentence that was imposed on him was the maximum sentence allowed by law.
 
 [6]
 
 He contends that the maximum sen
 
 *417
 
 tence he received is excessive. In
 
 State v. Smith,
 
 01-2574, p. 7 (La.1/14/03), 839 So.2d 1, 4, the Louisiana Supreme Court set forth the following standards for reviewing a claim of excessive sentence:
 

 Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the |8severity of the offense or constitutes nothing more than needless infliction of pain and suffering. A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion.
 

 Id.
 
 (Internal citations omitted). The reviewing court must determine whether the district court adequately complied with the sentencing guidelines set forth in La. C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case.
 
 State v. Soco,
 
 441 So.2d 719 (La.1983). If the reviewing court finds adequate compliance with Article 894.1, it must determine whether the sentence the district court imposed is too severe in light of the particular defendant as well as the particular circumstances of the case, “keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.”
 
 State v. Landry,
 
 03-1671, p. 8 (La.App. 4 Cir. 3/31/04), 871 So.2d 1235, 1239;
 
 see also State v. Bonicard,
 
 98-0665 (La.App. 4 Cir. 8/4/99), 752 So.2d 184. When the record clearly shows an adequate factual basis for the sentence, resentencing is unnecessary even when there has not been full compliance with Article 894.1.
 
 State v. Egana,
 
 97-0318 (La.App. 4 Cir. 12/3/97), 703 So.2d 223.
 

 At the sentencing hearing, the district court articulated several factors it considered in sentencing Mr. Every including the following:
 

 • He had an extensive criminal record that included three prior convictions for possession of cocaine. The arrest register that related to one of those prior convictions indicates twenty-eight packages of cocaine were involved. Another arrest register showed an original arrest for possession with intent to distribute cocaine. The plea of guilty was accepted to the lesser offense.
 

 fl* While Mr. Every was sentenced as a third offender, the district court noted that it had before it evidence that he had at least three prior convictions for possession of cocaine.
 
 [7]
 

 • While out on bond, Mr. Every failed to appear on two occasions, and he was found within blocks of the courthouse and arrested on similar drug charges.
 

 • The relatively large amount of cocaine involved in this case — 366.5 grams, which is over thirteen ounces — was clearly not for Mr. Every’s personal consumption but rather was intended for distribution to innocent third parties.
 

 • Mr. Every’s activities had a negative impact on the recovering neighborhoods along Tulane Avenue following
 
 *418
 
 Hurricane Katrina. The district court expressed its sentiments that the impact on the neighborhood where the crime occurred was unduly harsh.
 

 • Mr. Every was offered by the state, with the district court’s agreement, a plea bargain of ten years, but he refused the offer.
 
 [8]
 

 Given the detailed reasons for sentencing that were provided, we find the district court adequately complied with La.C.Cr.P. art. 894.1. We further find the record supports the sentence imposed. As the district court noted, Mr. Every had three prior drug-related convictions and was arrested on similar charges while out on bond. The district court thus apparently concluded that Mr. Every could not be rehabilitated. We still further find that Mr. Every’s sentence is not excessive when compared to the sentences imposed and upheld in similar cases.
 
 State v. Harvey,
 
 08-0217 (La.App. 4 Cir. 5/13/09), 12 So.3d 496;
 
 State v. Calway,
 
 98-2061 (La.App. 4 Cir. 11/17/99), 748 So.2d 1205.
 

 In
 
 Harvey, supra,
 
 this court upheld a maximum sixty-year sentence imposed on a defendant convicted of distribution of cocaine and sentenced as a second felony offender. The factors considered by the court before imposing the | inmaximum sentence included the defendant’s three prior convictions, the impact on the neighborhood, and the fact that while the defendant was out on bond he was arrested for a remarkably similar narcotics offense. The defendant also lied to the court about missing his trial date due to his attorney telling him to leave the building before he was arrested. The attorney denied telling him to do so. The defendant offered no mitigating factors at the sentencing hearing.
 

 In
 
 Calway, supra,
 
 this court affirmed a maximum sixty-year sentence imposed on a second-felony offender convicted of possession of cocaine with the intent to distribute. The defendant was found to be in possession of twenty-three rocks of cocaine. The defendant had prior convictions for theft, burglary, possession of narcotics paraphernalia, and possession of marijuana.
 

 Mr. Every argues that his sixty-year sentence is excessive when compared to
 
 State v. Bentley,
 
 02-1564 (La.App. 4 Cir. 3/12/03), 844 So.2d 149, which he contends involved an offense similar in terms of seriousness. In
 
 Bentley,
 
 as in this case, the defendant was convicted of distribution of cocaine, and he was adjudicated a third felony offender based on two prior convictions for possession of cocaine. The defendant in
 
 Bentley
 
 was sentenced to the minimum sentence of twenty years under La. R.S. 15:529.1(A)(b)(i). The issue the defendant raised on appeal in
 
 Bentley
 
 was whether given the relatively small amount of drugs involved — two pieces of cocaine that the defendant removed from his mouth to sell to an undercover officer— and the defendant’s non-violent history, the trial court should have deviated from the mandatory minimum sentence. Finding no error in the trial court’s refusal to deviate and impose a lesser sentence, we affirmed.
 

 Mr. Every’s reliance on
 
 Bentley, supra,
 
 is misplaced, legally and factually. Legally, this case, unlike
 
 Bentley, supra,
 
 involves a maximum sentence and thus Indoes not present an issue regarding deviating from the statutorily mandated sentencing range. Factually, this case, unlike
 
 Bentley, supra,
 
 involves a relatively large amount of drugs — 366.5 grams, which is over thirteen ounces.
 

 
 *419
 

 Vindictiveness of sentence
 

 Mr. Ever/s second counseled assignment of error is that the district court acted vindictively when it imposed a sentence in excess of that which was offered in a plea agreement. Stated otherwise, he contends that the district court imposed the maximum possible sentence to punish him for exercising his right to stand trial. In support, he quotes the district court’s two statements at the sentencing hearing regarding his arrogance in refusing to plead guilty and to accept the plea bargain. First, before sentencing Mr. Every, the district court stated:
 

 He was offered ten years. The State of Louisiana saw fit, despite all of this, to offer him ten years. I publicly tell you that I agreed to give him a chance with a ten year sentence. His arrogance, and that’s the only word — I’ve been seeking a word to describe what it would be to motivate someone like you not to at least admit your guilt.
 

 Second, after sentencing Mr. Every, the district court stated, “[i]n the end you are to be pitied because your arrogance got in the way.” Based on these statements, Mr. Every contends that this is the rare case in which the defendant can prove vindictiveness.
 

 In
 
 Bordenkircher v. Hayes,
 
 434 U.S. 357, 363-64, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), the United States Supreme Court stated:
 

 To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person’s reliance on his legal rights is “patently unconstitutional.” But in the “give-and-take” of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecutor’s offer....
 

 112While confronting a defendant with the risk of more severe punishment clearly may have a “discouraging effect on the defendant’s assertion of this trial right, the imposition of these difficult choices [is] an inevitable”-and permissible-“attribute of any legitimate system which tolerates and encourages the negotiation of pleas.” It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor’s interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty.
 

 Id.
 
 (Internal citations omitted.)
 

 The “mere imposition of a longer sentence than the defendant would have received had he pled guilty does not automatically constitute such punishment” for exercising the defendant’s right to stand trial.
 
 State v. Pittman,
 
 604 So.2d 172, 176 (La.App. 4th Cir.1992)(citing
 
 Frank v. Blackburn,
 
 646 F.2d 873 (5th Cir.1980)). Moreover, the Louisiana Supreme Court has noted that a district court’s pre-conviction offer of a lenient sentence should not be viewed as setting a limit for the justifiable sentence following conviction.
 
 State v. Barkley,
 
 412 So.2d 1380, 1383 (La.1982).
 

 In this case, Mr. Every neither alleged nor established that he was not free to accept or reject the State’s plea offer. Mr. Every simply exercised his right not to accept the offer and to go to trial. After Mr. Every was tried and convicted, the state exercised its right to file a multiple bill. At the multiple bill hearing, the district court was presented with evidence that Mr. Every had multiple prior drug related convictions. In sentencing Mr. Every, the district court, as discussed earlier, considered multiple factors. Among those
 
 *420
 
 factors was Mr. Every’s extensive prior criminal history. The district court also mentioned at the sentencing hearing that it took the opportunity at the trial outside the presence of the jury to hold the evidence — the bag of cocaine — and that it took into account the relatively large amount of drugs contained in that bag— over thirteen ounces — in arriving at [lsan appropriate sentence. The district court’s sentencing decision was thus influenced by the evidence introduced at trial as well as at the multiple bill hearing. The district court’s references in sentencing to Mr. Every’s refusal of the plea bargain, when viewed in context, thus do not establish vindictiveness.
 

 COUNSELED ASSIGNMENT OF ERROR NUMBER 3
 

 Mr. Every’s third counseled assignment of error is that La.C.Cr.P. art. 782(A) is unconstitutional insofar as it allows for non-unanimous verdicts in non-capitol felony cases.
 
 [9]
 
 We find this assignment unpersuasive.
 
 [10]
 

 As Mr. Every acknowledges, the appellate courts that have addressed this issue, including this court, have rejected it.
 
 State v. Tillman,
 
 08-0408, p. 27 (La.App. 4 Cir. 3/4/09), 7 So.3d 65,
 
 State v. Smith,
 
 09-100, pp. 13-14 (La.App. 5 Cir. 8/23/09), 20 So.3d 501, 507-08 (collecting cases from all the circuits). He argues, nonetheless, that an application for certiorari is pending before the United States Supreme Court in an Oregon case,
 
 State v. Bowen,
 
 215 Or.App. 199, 168 P.3d 1208 (2007), in which the court held that the defendant was not entitled to a jury instruction forbidding a conviction upon less than a unanimous jury verdict. However, on October 5, 2009, the United States Supreme Court denied certiorari in that case.
 
 Bowen v. Oregon,
 
 — U.S. —, 130 S.Ct. 52, 175 L.Ed.2d 21 (2009).
 

 The Louisiana Supreme Court in
 
 State v. Bertrand,
 
 08-2215, 08-2311 (La.3/17/09), 6 So.3d 738, reversed a trial court ruling declaring La.C.Cr.P. art. 782 unconstitutional. In so doing, the Court reasoned:
 

 | uDue to this Court’s prior determinations that Article 782 withstands constitutional scrutiny, and because we are not presumptuous enough to suppose, upon mere speculation, that the United States Supreme Court’s still valid determination that non-unanimous 12 person jury verdicts are constitutional may someday be overturned, we find that the trial court erred in ruling that Article 782 violated the Fifth, Sixth, and Fourteenth Amendments. With respect to that ruling, it should go without saying that a trial judge is not at liberty to ignore the controlling jurisprudence of superior courts.
 

 Bertrand,
 
 08-2215, 08-2311 at p. 8, 6 So.3d at 743.
 

 PRO SE
 
 ASSIGNMENT OF ERROR NUMBER 1
 

 Mr. Every contends that the evidence was insufficient to convict him of the cocaine offense — possession with intent to distribute of between two hundred and four hundred grams of cocaine. He notes that the Unit 1129 at the storage facility in
 
 *421
 
 which the cocaine was found was rented to Ms. Mathew. He further notes that the Mercedes in which the keys to the storage unit were found was registered to Ms. Mathew. He still further notes that there was no evidence establishing he actually entered Unit 1129 at the storage facility.
 

 In
 
 State v. Brown,
 
 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18, the Louisiana Supreme Court set forth the standard for determining a claim of insufficiency of evidence:
 

 When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.”
 

 When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Ultimately, all 1^¡¡evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury.
 

 Id.
 
 (Internal citations omitted).
 

 To support a conviction for possession of a controlled dangerous substance in violation of La. R.S. 40:967, the state must prove that the defendant knowingly and intentionally possessed the drug.
 
 State v. Perron,
 
 01-0214, p. 6 (La.App. 4 Cir. 1/16/02), 806 So.2d 924, 928. The state need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support the conviction.
 
 Id.
 
 A person not in physical possession of narcotics may have constructive possession when the drugs are under that person’s dominion and control.
 
 Id.
 
 Determination of whether a defendant had constructive possession depends on the circumstances of each case.
 
 Id.
 
 In determining whether a defendant exercised the requisite dominion and control, factors which may be considered are his knowledge that illegal drugs are in the area, his relationship with one found to be in actual possession, his access to the area where drugs were found, his physical proximity to the drugs and the evidence that the area was frequented by drug users.
 
 Perron,
 
 01-0214 at pp. 6-7, 806 So.2d at 928.
 

 In this case, the state established that Mr. Every constructively possessed the cocaine found in Unit 1129 of the storage facility. The officers’ testimony established that Mr. Every visited the storage unit alone and that he entered building 1100, which contained unit 1129. After leaving the storage facility, the officers observed a hand-to-hand transaction between Mr. Every and an unknown male in a motel parking lot. After he was arrested, Mr. Every admitted that he had 1 if,stored approximately a quarter kilogram of cocaine at the storage facility and that the keys to the storage facility were located inside the console of the Mercedes. Although, as Mr. Every points out, the storage unit was rented by Ms. Mathew and she was the registered owner of the Mercedes in which the keys to the storage unit were kept, the evidence established that Mr. Every exercised dominion and control of the cocaine found in the storage facility.
 

 PRO SE
 
 ASSIGNMENT OF ERROR NUMBER 2
 

 Mr. Everts final contention is that the district court erred in admitting
 
 *422
 
 his statement regarding the cocaine in the storage facility. He urges that the statement should have been excluded since the state failed to prove that he was given his
 
 Miranda
 
 rights and that he waived those rights. He further urges that the state failed to present a signed form, and he denies ever making a statement.
 

 Before what purports to be a confession can be introduced in evidence, “it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.” La. R.S. 15:451;
 
 see State v. Gradley,
 
 97-0641 (La.5/19/98), 745 So.2d 1160;
 
 State v. Butler,
 
 04-0880 (La.App. 4 Cir. 1/12/05), 894 So.2d 415. Before a confession may be introduced, the state also must establish that the accused was advised of his constitutional rights.
 
 State v. Simmons,
 
 443 So.2d 512 (La.1988);
 
 see also State v. James,
 
 04-0878 (La.App. 4 Cir. 2/23/05), 897 So.2d 821. A trial judge’s ruling on whether or not a statement is voluntary is given great weight and will not be disturbed on appeal unless clearly unsupported by the evidence.
 
 State v. Thornton,
 
 351 So.2d 480, 484 (La.1977). The testimony of police officers alone can be sufficient to prove the defendant’s statements were freely and voluntarily given.
 
 State v. Jones,
 
 97-2217, p. 11 (La.App. 4 Cir. 2/24/99), 731 So.2d 389, 396.
 

 At the motion hearing and at trial, Detective Roccaforte testified that he advised Mr. Every of his constitutional rights and, on both occasions, he recited those rights in open court. He further testified that Mr. Every verbally acknowledged that he understood his rights. He still further testified that after being informed of his rights and realizing that the officers knew about the storage facility, Mr. Every voluntarily admitted that approximately a quarter kilogram of cocaine was stored at the facility. The district court apparently found Detective Roccaforte’s testimony credible. Despite the lack of a completed written form, we find the district court did not abuse its discretion when it denied the motion to suppress Mr. Every’s statement.
 

 DECREE
 

 For the foregoing reasons, the defendant’s conviction is affirmed. The defendant’s sixty-year sentence is amended to delete the prohibition against probation or parole eligibility and his sentence is affirmed as amended.
 

 SENTENCE AFFIRMED, CONVICTION AMENDED AND AFFIRMED AS AMENDED.
 

 [1]
 

 . Although Mr. Every was convicted and sentenced on two drug-related offenses, he challenges on appeal only one of them, the cocaine offense.
 

 [2]
 

 . At the motion hearing, Ms. Mathew’s name was spelled out as "Ronschell Maihieu.” In this opinion, we use her name as it appears in the trial transcript, “Rochelle Mathew.”
 

 [3]
 

 . The cocaine found in the apartment in a dresser drawer was not the basis on which Mr. Every was charged. Rather, the cocaine charge in this case was based solely on the 366.5 grams of cocaine found in the storage unit.
 

 [4]
 

 . Ms. Mathew was not subpoenaed to testify at trial. Although defense counsel spoke with her on the eve of trial about testifying, she declined. When this issue was raised by the defense at trial, the district court pointed out that even had Ms. Mathew testified she most likely would have invoked the Fifth Amendment.
 

 [5]
 

 .
 
 See also State v. Batiste,
 
 06-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810 (noting under similar circumstances thát it was unclear if the defendant had preserved the issue for review, but addressing issue as part of ineffective assistance of counsel claim that was asserted);
 
 State v. Lee,
 
 09-37 (La.App. 5 Cir. 5/12/09), 15 So.3d 229 (addressing question of vindictiveness in sentencing despite the defendant’s failure to raise the issue before the district court);
 
 State v. Aleman,
 
 01-743, pp. 12-13 (La.App. 5 Cir. 1/15/02), 809 So.2d 1056, 1066 (same).
 

 [6]
 

 . La. R.S. 15:529.l(A)(b)(i) provides that if the third or subsequent conviction is such that the offender would be punishable by imprisonment for any term less than his natural life, he shall be sentenced to imprisonment for the third or subsequent felony for a determinate term "not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction.” Mr. Every’s conviction in the instant case was for possession of between two hundred and four hundred grams of cocaine, a violation of La. R.S. 40:967(F). He was subject to a sentence under La. R.S. 40:967(F)(1)(b) of imprisonment at hard labor of not less than ten years, nor more than thirty years, and to pay a fine of not less than one hundred thousand
 
 *417
 
 dollars, nor more than three hundred fifty thousand dollars. As noted, the trial court imposed the minimum fine of $100,000.
 

 [7]
 

 . The State points out that had Mr. Every been sentenced as a quadruple offender he would have been subject to a mandatory life sentence.
 

 [8]
 

 . As discussed elsewhere, the district court's reference to the plea bargain at the sentencing hearing is the basis for Mr. Every’s claim of vindictiveness in sentencing.
 

 [9]
 

 . At the end of the sentencing hearing Mr. Every's counsel preserved this issue for appeal by requesting that the district court put on the record that one of the grounds for his appeal would be the constitutionality of a non-unanimous jury verdict.
 

 [10]
 

 . The record on appeal does not indicate that the jury was polled. Nor does the record show the actual jury vote. However, according to Mr. Every's appellate counsel, his trial counsel represented that the jury vote was ten to two, and the state has not challenged that representation of the vote.