745 So.2d 737 (1999)
STATE of Louisiana
v.
Walter BOOTH.
No. 98-KA-2065.
Court of Appeal of Louisiana, Fourth Circuit.
October 20, 1999.
*739 Karen Godail Arena, Louisiana Appellate Project, Metairie, Louisiana, Attorney for Defendant/Appellant, Walter Booth, Jr.
Harry F. Connick, District Attorney, Holli Herrle-Castillo, Assistant District Attorney of Orleans Parish, New Orleans, Louisiana, Attorney for Appellee.
Court composed of Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY and Judge ROBERT A. KATZ.
MURRAY, Judge.
Walter Booth, Jr., appeals his conviction and sentence for possession of heroin, claiming that he was denied Brady material to which he was entitled, and that there was insufficient evidence presented to support his conviction. For the following reasons, we affirm the conviction, but vacate the sentence because of an error patent, and remand to the trial court for resentencing.

STATEMENT OF THE CASE
Defendant Walter Booth, Jr., was charged by bill of information with possession of heroin, to which he pled not guilty.[1] A twelve-person jury found him guilty as charged on February 19, 1998. Mr. Booth filed a motion for new trial that was set for hearing on the same day as his sentencing. However, the motion was not ruled on prior to Mr. Booth's sentencing on May 5, 1998, when he was sentenced to five years at hard labor. The trial court denied a motion to reconsider sentence, and granted a motion for appeal.

FACTS
New Orleans Police Officer Travis McCabe testified that on October 20, 1997, he conducted an investigation of 2309 Sixth Street, Apartment 2, after he and Sergeant Steven Gaudet received information from a confidential informant. The officers later applied for and received a search warrant for the premises. He and Sgt. Gaudet, along with two other officers and a dog trained to search for drugs, executed the warrant on an apartment occupied by Mr. Booth and Gail Varnado. Officer McCabe described the apartment as small, consisting of one bedroom, one bathroom, a living room, and a kitchen. The search dog located narcotics inside a wall-mounted heater. Officer McCabe opened the vent on the bottom and found a plastic package containing approximately twenty-seven aluminum foil *740 packages of heroin. The officers also discovered on top of a curio cabinet, a large felt hat containing a syringe, a long piece of rubber, and a small plastic bag containing five additional small foil packages of heroin. Officer McCabe also recovered an Entergy electric bill in Mr. Booth's name, and a letter from a religious organization addressed to both him and Ms. Varnado, both of which were addressed to 2309 Sixth Street, Apartment "D." At that point, Mr. Booth and Ms. Varnado were advised of their rights and arrested.
On cross-examination, Officer McCabe admitted that none of the drugs was in plain view, and that initially the focus of the police investigation was Ms. Varnado. He said he had occasion to watch the apartment from a distance, and witnessed an informant make a purchase from Ms. Varnado with a marked twenty-dollar bill, although this marked twenty-dollar bill was not found during the search of the apartment. Finally, Officer McCabe testified that people from other apartments in the same complex were arrested that night, and that about $200 were seized from those persons. On redirect examination, Officer McCabe said that Ms. Varnado was in the company of a black female at the time of the drug sale he witnessed, and that this female was not inside Mr. Booth's apartment at the time the search warrant was executed.
New Orleans Police Officer John Favalora testified that he and his search dog searched Mr. Booth's apartment at 2309 Sixth Street in the early morning hours of October 21, 1997. The officer said his dog detected narcotics in a wall-mounted heater, where heroin was found. He said other officers also found narcotics in a curio cabinet.
New Orleans Police Sergeant Steve Gaudet explained that he remained in the area of the apartment complex while Officer McCabe went to obtain the search warrant. He detained Ms. Varnado outside of the apartment as she was leaving, and took her inside, where Mr. Booth was seated in the front room, clad only in a pair of boxer shorts. He said the wall-mounted heater where the drugs were found was next to the sofa where Mr. Booth was seated.
It was stipulated that if criminalist John Palm would testify, he would be qualified as an expert in the field of the forensic analysis of controlled dangerous substances, and would testify that he tested the substances found at the Sixth Street address, and found them to be positive for heroin.
Mr. Booth testified in his own behalf, and stated that on October 20 and 21, 1997, he was living at the Sixth Street address, but Ms. Varnado, whom he stated was his fiancée, was not living there. In fact, Mr. Booth had no idea where Ms. Varnado was living at that time. He had agreed only that Ms. Varnado could stay at his apartment that particular night, in the front room. Mr. Booth claimed that when police found him he was sleeping in the bedroom, and they awakened him and asked where Ms. Varnado was. He denied knowledge of any drugs in the heater or in the hat.
On cross-examination, Mr. Booth again stated that Ms. Varnado was his fiancée, but said he and she "had a legal separation by the court, the municipal court." He again denied being awake sitting in the living room when police entered the apartment. Mr. Booth said the letter addressed to Ms. Varnado found in his apartment was brought with her from her jail cell. He explained that she recently had been paroled, and was going to live with him, but they had an altercation and he put her out. He said she asked to stay in the front room for a couple of days, and that was how the letter got there. Mr. Booth admitted to a 1995 conviction for "having a gun," a conviction for possession of marijuana, a 1975 conviction for being a convicted felon in possession of a firearm, and a conviction for armed robbery. He denied or could not recall prior convictions *741 for theft, possession of crack cocaine, and a second armed robbery conviction.

ASSIGNMENT OF ERROR NO. 1 AND PRO SE ASSIGNMENT OF ERROR NO. 1
By this assignment of error, Mr. Booth claims that the evidence is insufficient to sustain his conviction.
This court set out the standard for reviewing convictions for sufficiency of the evidence in State v. Nogess, 98-0670 (La.App. 4 Cir. 3/3/99), 729 So.2d 132, as follows:
In evaluating whether evidence is constitutionally sufficient to support a conviction, an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of act could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). However, the reviewing court may not disregard this duty simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Mussall; Green; supra. "[A] reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Smith, 600 So.2d 1319 (La.1992) at 1324.
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. This is not a separate test from Jackson v. Virginia, supra, but rather an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La. 1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817 (La.1987).
98-0670, pp. 8-9, 729 So.2d at 136-137.
La.Rev.Stat. 40:966(C) makes it unlawful for any person to knowingly or intentionally possess heroin, a controlled dangerous substance classified in Schedule I. In State v. Brady, 97-1095 (La.App. 4 Cir. 1999), 727 So.2d 1264, rehearing granted on other grounds, (La.App. 4 Cir. 3/16/99), this Court stated:
To support a conviction for possession of narcotics, the State must prove that a defendant knowingly possessed narcotics. State v. Chambers, 563 So.2d 579, 580 (La.App. 4th Cir.1990). The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support conviction. See State v. Trahan, 425 So.2d 1222, 1226 (La.1983); see also State v. Cann, 319 So.2d 396, 397 (La.1975). The mere presence of a defendant in the area where the narcotics were found is insufficient to prove constructive possession. See State v. Collins, 584 So.2d 356, 360 (La.App. 4th Cir.1991); see also Cann, supra at 397.
A person not in physical possession of narcotics may have constructive possession when the drugs are under that person's dominion and control. State v. Jackson, 557 So.2d 1034, 1035 (La.App. 4th Cir.1990). A person may be deemed *742 to be in joint possession of a drug which is in the physical possession of a companion if he willfully and knowingly shares with the other the right to control it. State v. Smith, 257 La. 1109, 245 So.2d 327, 329 (1971). Determination of whether a defendant had constructive possession depends on the circumstances of each case. See Cann, supra at 399-400. Among the factors to consider in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession are whether the defendant knew that illegal drugs were present in the area, the defendant's relationship to the person in actual possession of the drugs, whether there is evidence of recent drug use, the defendant's proximity to the drugs, and any evidence that the area is frequented by drug users. See State v. Pollard, 93-1960, p. 13 (La.App. 4th Cir. 7/14/94), 640 So.2d 882, 888.
97-1095 at pp. 7-8, 727 So.2d at 1268, quoting State v. Allen, 96-0138, pp. 4-5 (La.App. 4 Cir. 12/27/96), 686 So.2d 1017, 1020.
In the instant case, police observed Ms. Varnado sell narcotics to an informant out of Mr. Booth's apartment. She was detained and taken inside of the apartment, where she admittedly was staying. Mr. Booth admitted that Ms. Varnado was his fiancée. Accepting the testimony of Officer McCabe, Mr. Booth was in the front room when police entered. Heroin was found in a wall-mounted heater next to where Mr. Booth was seated, and more heroin and drug paraphernalia was found in a curio cabinet in the living room. A letter found in the apartment was addressed to Mr. Booth and Ms. Varnado, at the apartment in question.
Mr. Booth's testimony conflicted with that of police officers in that he said he was sleeping in his bedroom when police entered the apartment and asked him where Ms. Varnado was. He disputed that the police took Ms. Varnado into custody outside, and brought her into the apartment when they entered. Mr. Booth denied any knowledge of the drugs in his apartment, and said his fiancée was only staying at his apartment temporarily. The jury knew that Mr. Booth had prior convictions for armed robbery, possession of marijuana, and being a convicted felon in possession of a firearm. The jury obviously did not believe that Mr. Booth was not aware of the heroin found in two locations in his apartment. The trier of fact's determination of credibility should not to be disturbed on appeal absent an abuse of discretion. State v. Sullivan, 97-1037, p. 20 (La.App. 4 Cir. 2/24/99), 729 So.2d 1101; State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir.1989).
In State v. Maresco, 495 So.2d 311 (La. App. 4 Cir.1986), writ denied, 500 So.2d 419 (La.1987), police served a search warrant on an apartment where Lori Wermuth and her fiancé, Gary Weaver, resided. Wermuth was at work when the warrant was served, but Weaver and Steven Maresco were in the apartment. Police found seven pounds of marijuana packaged in large and small plastic bags in the kitchen and on the dining room table, and a vinyl bag inside of a closed trunk in the bedroom containing over six thousand Valium pills. A scale was also recovered, along with mail addressed to Wermuth. In affirming Wermuth's conviction for possession with intent to distribute marijuana, this Court stated: "Although Lori Wermuth was not home when the warrant was executed, the marijuana was seized in her apartment.... The jury was satisfied that the State proved Wermuth ... exercised sufficient control over the marijuana. Their conclusion was reasonable and there is no basis to hold otherwise."
In the instant case, viewing all of the evidence in a light most favorable to the prosecution, any rational trier of fact could have found that Mr. Booth knowingly exercised dominion and control over the heroin found in his apartment, and that all of the essential elements of the offense of possession *743 of heroin were proven beyond a reasonable doubt.

PRO SE ASSIGNMENT OF ERROR NO. 2
By this assignment of error, Mr. Booth argues that the State withheld or suppressed information favorable to him, citing Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Specifically, he cites the police report, the search warrant and the crime lab report.
Brady imposes a duty on the State to disclose exculpatory information which is material to guilt or innocence, when the defendant requests such information. State v. Green, 98-0912 (La.App. 4 Cir. 9/9/98), 731 So.2d 286, 295, opinion reinstated on rehearing, 731 So.2d 298, writ denied, 99-0043 (La. 5/7/99), 741 So.2d 28; State v. Davis, 96-0872, p. 7 (La.App. 4 Cir. 8/19/98), 727 So.2d 453, 457, writ denied, 99-0154 (La. 1999), 741 So.2d 666. Evidence is material only if it is reasonably probable that the result of the proceeding would have been different had the evidence been disclosed to the defense. A reasonable probability is one that is sufficient to undermine confidence in the outcome. The defendant need only show that disclosure of the suppressed evidence to competent counsel would have made a different result reasonably probable. State v. Marshall, 94-0461, pp. 19-20, (La. 9/5/95), 660 So.2d 819, 826; State v. Lindsey, 98-1064, pp. 2-3 (La.App. 4 Cir. 6/3/98), 715 So.2d 544, 546.
A minute entry dated January 7, 1998, indicates that defense counsel received a copy of the police report, and then withdrew all discovery motions. Because defense counsel withdrew all previously filed discovery motionsa request for exculpatory material is a discovery motionthe State was under no duty to turn over such material. The trial transcript also reflects that the search warrant was introduced into evidence at trial by the State, and that defense counsel not only stipulated at trial that the criminalist would testify that the substances seized from Mr. Booth's apartment were heroin, but that the substances themselves were in fact heroin.
Mr. Booth also has not shown that disclosure of this evidence to competent counsel would have made a different result reasonably probable. Accordingly, the evidence cannot be considered material, and, thus, there was no Brady violation. Marshall, supra; Lindsey, supra.

ERRORS PATENT & PRO SE ASSIGNMENT OF ERROR NO. 3
A review of the record reveals one error patent. Mr. Booth filed a motion for new trial on March 20, 1998, which was not disposed of before sentencing on May 5, 1998, as required by La.Code Crim. Proc. art. 853. A minute entry filed in the record in this Court on October 15, 1998, reflects that the trial court did not deny the motion for new trial until October 13, 1998, over five months after sentencing. Because the motion for new trial was pending at the time of sentencing, Mr. Booth's sentence must be vacated and the case remanded for resentencing. State v. Anderson, 95-1252, p. 3 (La.App. 4 Cir. 7/31/96), 679 So.2d 181, 183.
For the foregoing reasons, we affirm Mr. Booth's conviction, but vacate the sentence, and remand for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
NOTES
[1] Defendant was jointly indicted with Gail Varnado, who pleaded guilty as charged prior to defendant's trial.