DANIEL L. DYSART, Judge.
| tDefendant, Bruce Hayes was charged with one count each of possession with intent to distribute cocaine and methylene-dioxymethamphetamine, MDNA (ecstasy). A jury found defendant guilty as charged as to count one, possession with intent to distribute cocaine and as to count two, he was found guilty of the lesser included offense of attempted possession of ecstasy. Defendant was sentenced to serve five years at hard labor on count one and to serve two years at hard labor on count two. Defendant appeared for a multiple bill hearing and pled guilty to being a second felony offender. After vacating the previous sentences imposed, the district court resentenced defendant on both counts to serve fifteen years at hard labor, to run concurrently. This Court twice ordered the district court to grant defendant an out-of-time appeal.[1] An appeal was granted on September 15, 2011.
Defendant raises three assignments of error on appeal: that he received ineffective assistance of counsel during the plea negotiations, trial and sentencing; that the trial court erred in admitting the criminalist lab report without testimony Land the evidence was insufficient to convict; and, that the his sentence is unconstitutionally excessive.
For the reasons set forth below we affirm the convictions, vacate the sentences in part, and render.
FACTUAL BACKGROUND:
The testimony at the trial reflected that on October 20, 2008 New Orleans Police Department Detectives Robbie Bangham and Victor Gant, Jr., conducted a surveillance of the residence located at 1328 Charbonnet Street due to several citizen complaints of drug activity in the area. The detectives were not in uniform, and they were driving an unmarked police vehicle. Using binoculars, the detectives observed an African-American male, later identified as the defendant standing in the gated yard of the residence on Charbonnet Street. The detectives observed three separate exchanges between the defendant *363 and unknown subjects, which they believed to be drug transactions. As defendant was crossing the street to meet a third unknown subject at an abandoned house, he was confronted by the detectives. The defendant fled on foot, and discarded an object retrieved by one of the detectives, found later to be cocaine. After the defendant was apprehended he was brought back to the Charbonnet residence. After obtaining a search warrant, and with the use of a drug-sniffing dog, cocaine as well as ecstasy pills were found in a box located in the front bedroom of the residence.
Defendant presented a defense which included the testimony of his mother and two sisters. Their testimony revealed that while the defendant visited the Charbonnet house several times a week and received his mail there, it was not his residence. However, the search of the house revealed two tax forms bearing defendant’s name with the Charbonnet Street address in the room where the |3cocaine and ecstasy were located. In addition, male clothing was found in the same room.[2]
DISCUSSION:
A. Insufficiency of Evidence
Defendant argues that the evidence was insufficient to support his convictions. When issues are raised on appeal as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. State v. Hearold, 603 So.2d 731, 734 (La.1992); State v. Marcantel, 00-1629, p. 8 (La.4/3/02), 815 So.2d 50, 55.
In State v. Brown, 03-0897, p. 22 (La.4/12/05), 907 So.2d 1, 18, the Court set forth the standard for determining a claim of insufficiency of evidence:
When reviewing the sufficiency of the evidence to support a conviction, Louisiana appellate courts are controlled by the standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under this standard, the appellate court “must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657 (citing State v. Captville, 448 So.2d 676, 678 (La.1984)).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” Neal, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. Id. (citing State v. Rosiere, 488 So.2d 965, 968 (La.1986)).
|41. Proof of Dominion and Control:
Defendant argues that the State failed to show he had dominion and control over the narcotics found inside the closet at the Charbonnet Street residence and that the crime lab report, introduced without supporting testimony, was improperly admitted.
Addressing the issue of dominion and control, to support a conviction for possession of a controlled dangerous substance in violation of La. R.S. 40:967 and La. R.S. 40:966, the State must prove that the defendant knowingly and intentionally possessed the drug. State v. Perron, 01- *364 0214, p. 6, (La.App. 4 Cir. 1/16/02), 806 So.2d 924, 928. The State need not prove that the defendant was in actual possession of the narcotics found; constructive possession is sufficient to support the conviction. Perron, 01-0214, p. 6, 806 So.2d 924, 928, citing State v. Trahan, 425 So.2d 1222, 1226 (La.1983). A person not in physical possession of narcotics may have constructive possession when the drugs are under that person’s dominion and control. Perron, 01-0214, p. 6, 806 So.2d 924, 928, citing State v. Jackson, 557 So.2d 1034, 1035 (La.App. 4 Cir.1990). A determination of whether a defendant had constructive possession depends on the circumstances of each case. Perron, 01-0214, p. 6, 806 So.2d 924, 928, citing State v. Cann, 319 So.2d 396, 397 (La.1975). In determining whether defendant exercised the requisite dominion and control, factors which may be considered are his knowledge that illegal drugs are in the area, his relationship with one found to be in actual possession, his access to the area where drugs were found, his physical proximity to the drugs and the evidence that the area was frequented by drug users. Perron, 01-0214, p. 6-7, 806 So.2d 924, 928, citing State v. Reaux, 539 So.2d 105, 108 (La.App. 4 Cir.1989). In the instant matter, the evidence presented at trial j¿established that the defendant exercised dominion and control over the cocaine and ecstasy found in the Charbonnet Street residence.
The detectives observed the defendant outside of the Charbonnet Street residence taking part in what they believed to be three separate drug transactions. During the first two exchanges, defendant met with the subject, received currency, entered the residence and then returned outside moments later to deliver an object to the subjects.
As he attempted to cross the street to meet with the third unknown subject at an abandoned residence, defendant was confronted by the detectives and fled, discarding the cocaine to the ground as he ran. As such, the jury reasonably inferred that he possessed the cocaine found inside the Charbonnet Street residence. Though the defendant was never found to be in actual possession of any ecstasy pills, the ecstasy pills were found inside the same box in which the cocaine was located; thus, the jury also could have reasonably inferred that he exercised dominion and control over the ecstasy pills found alongside the cocaine.
2. Criminalist Report as Hearsay:
Second, defendant argues that the evidence was insufficient because the State’s criminalist lab report was erroneously admitted as proof that the substances discarded by defendant and those substances found in the Charbonnet Street residence were in fact cocaine and ecstasy. He maintains that introduction of the criminalist report was inadmissible hearsay, and the admission of the report denied him the right to confront the witnesses against him.
Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), holds that the confrontation clause of the Sixth Amendment acts as an absolute bar on the admission of all out-of-court testimonial evidence unless (1) the witness who made | nthe statement is unavailable to testify in court, and (2) the defendant had a prior opportunity to cross-examine the witness. Id. at 68, 124 S.Ct. at 1374; State v. Smith, 04-3140 (La.6/24/05), 906 So.2d 391. An analyst’s report and certification regarding forensic evidence is considered a testimonial statement and is subject to confrontation clause requirements. Melendez-Diaz v. Massachusetts, 557 U.S. *365 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). If the report and certification are presented as evidence, then the person called for testimony and cross-examination on the evidence must have conducted or observed the tests on which the report and certification are based. Bullcoming v. New Mexico, — U.S. —, 131 S.Ct. 2705, 180 L.Ed.2d 610, (2011). In Melendez-Diaz, the Court recognized that some states have “notice and demand statutes” that do not violate the confrontation clause because they do not shift to the defendant the burden to call the testing analyst to trial.
Louisiana Revised Statute 15:499 provides that criminal laboratories are authorized to provide proof of examination and analysis of physical evidence by providing a certificate of the person in charge of the facility. A party introducing a certificate of analysis under La. R.S. 15:499 must provide written notice of intent to offer proof by certificate at least ten days prior to trial. La. R.S. 15:501. The defendant may then demand that the person who conducted the examination and analysis testify by timely filing a written demand within five days of the notice of intent. Id. If the certificate and notice comply with La. R.S. 15:499 and 15:501, then the certificate is admissible and considered prima facie evidence of the facts provided therein. La. R.S. 15:500. However, if the defendant properly demands the testimony of the analyst who performed the tests, then the certificate is not \7prima facie evidence and the analyst must testify to establish the test results. La. R.S. 15:501.[3]
In State v. Cunningham, 04-2200 (La.6/13/05), 903 So.2d 1110, the Louisiana Supreme Court found that La. R.S. 15:501 is a “notice and demand statute.” If the prosecution complies with La. R.S. 15:499, et seq., then the certificate and report are admissible and the defendant must make a timely written demand that the analyst testify, or the defendant waives his Sixth Amendment right under the confrontation clause. State v. Simmons, 11-1280 (La.1/20/12), 78 So.3d 743.
Here, the minute entry of July 2, 2009 reflects that the State timely filed its notice of intent to introduce into evidence the State’s criminalist report as prima facie proof pursuant to La. R.S. 15:499-501.[4]
Defendant argues that Cunningham and Simmons are inapplicable as he retained counsel after the State filed its notice of intent, and the notice was never filed into the record. However, the record reflects that defendant did not object to the admission of the report insofar as it confirmed the authenticity of the cocaine and ecstasy seized from the defendant and the Char-bonnet Street residence. Instead, the defense sought a stipulation from the State that the criminalist did not know the origin of the drugs tested, which the state declined. A similar objection was made when the State introduced the report during trial, but was overruled.
| «Louisiana Code Criminal Procedure art. 841 A requires that a defendant present the grounds upon which an objection is made, and a defendant is limited on appeal to those grounds made at the time of the objection. State v. Jackson, 450 So.2d 621, 633-34 (La.1984); State v. *366 Brooks, 98-0693 (La.App. 4 Cir. 7/21/99), 758 So.2d 814. In the instant matter defendant did not object to the State’s crimi-nalist report being admitted as prima fa-cie proof that the substances seized from defendant and the Charbonnet Street residence were cocaine and ecstasy. We find that this claim has not been preserved for review and that the State complied with La. R.S. 15:499-501 by timely filing its notice of intent; thus, the criminalist report was properly admitted by the trial court.
B. Ineffective Assistance of Counsel:
Defendant argues that his retained counsel was ineffective during the plea bargaining process, as he did not become aware of the strength of the State’s ease until he received the preliminary hearing transcript on the second day of trial.[5] He argues that his trial counsel was ill-prepared to advise him as to whether he should have accepted the plea bargain offered by the State of seven years at hard labor and no multiple bill.[6]
Defendant’s claim of ineffective assistance of counsel is to be evaluated in accordance with the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The defendant must demonstrate that his counsel’s performance was deficient and that he was prejudiced by the deficiency.
| (¡Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post-conviction relief filed in the trial court where a full evidentiary hearing can be conducted. State v. Griffin, 02-1703, pp. 8-10 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, 40; State v. Prudholm, 446 So.2d 729 (La.1984). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983).
In support of his claim that his attorney was ineffective during the plea bargaining process, defendant cites two recent United States Supreme Court cases, Lafler v. Cooper, — U.S. —, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012) and Missouri v. Frye, — U.S. —, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012).
In Lafler, the defendant was charged under Michigan law with assault with intent to murder and three other offenses. The prosecution offered to dismiss two of the charges and to recommend a fifty-one to eighty-five month sentence on the other two in exchange for a guilty plea. The defendant admitted his guilt before the court and expressed a willingness to accept the offer; however, he later rejected the offer after his attorney convinced him that the prosecution would not be able to establish intent to murder as the victim had been shot below the waist.[7] The defendant proceeded to trial and was convicted on all counts, receiving a mandatory minimum 185 to 360 month sentence. The defendant subsequently urged that his at *367 torney’s advice to reject the plea constituted ineffective assistance of counsel after his state appeals were exhausted, he sought relief in a federal | ^habeas proceeding. After noting that the parties stipulated that counsel’s performance was deficient, the Court found that the Michigan court erred because it applied the wrong standard; the Michigan court’s inquiry was whether the rejection of the plea was knowing and voluntary. The proper standard under Strickland is the prejudice test, namely, whether there was a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. The Court held that when the prejudice alleged is having to go to trial that a defendant must show that but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea, and the prosecution would have withdrawn it in light of intervening circumstances); that the court would have accepted the terms; and that the conviction or sentence, or both, under the offer’s terms would have been less severe than under the actual judgment and sentence imposed. Lafler at 1383-1388. Lafler made the requisite showing.[8] Frye simply applied Strickland to the situation where counsel fails to inform a defendant of a plea offer, and the offer lapses.
In this matter, the record fails to disclose sufficient evidence to rule on defendant’s claim of ineffective assistance of counsel. The only mention made of a plea agreement was during the multiple bill hearing. Though the transcript reflects that he rejected the deal offered by the State, the transcript does not reveal |nhis reasons for rejecting the plea agreement or when the plea agreement was offered. Defendant’s claim of ineffective assistance of counsel, as regards his rejection of the plea agreement can be better raised in an application for post-conviction relief where he can attempt to make the requisite showing.
C. Improper Multiple Bill Adjudication and Excessive Sentences[9]
In addition to the claims previously addressed during the errors patent review, defendant argues that his multiple offender adjudication should be vacated because he was not informed of the rights that he was waiving when he admitted to being a second felony offender.
Louisiana Revised Statute 15:529.1 provides that the trial court shall inform a defendant of the allegations contained in the multiple bill of information and of his *368 right to be tried as to the truth thereof according to law, and shall require the offender to say whether the allegations are true.
The record in the present case does not reflect that the trial court advised defendant at the multiple offender hearing of his right to a formal hearing, to have the State prove its case under the multiple offender statute, or of his right to remain silent. See State v. Johnson, 432 So.2d 815 (La.1983); State v. Desmond, 524 So.2d 147 (La.App. 4 Cir.1988). Also, no waiver of rights form for the multiple bill was executed by the defendant.
The transcript reflects that at the hearing on the multiple bill, counsel for defendant, in the best interest of his client and with the understanding that his | ^client wished to be truthful, admitted that defendant was a multiple offender based upon a felony guilty plea to cocaine possession in Texas after Hurricane Katrina, for which he received a two-year sentence. The State submitted to the court certified documents from Texas reflecting the validity of defendant’s guilty plea for possession of cocaine. The State indicated it was prepared to go forward with the multiple bill hearing. Before sentencing defendant as a multiple offender, the court first noted that defendant admitted to violating La. R.S. 15:529.1, then formally found that he was a multiple offender.
Defendant argues that his ease is similar to that in State v. Common, 10-996 (La.App. 5 Cir. 11/15/11), 78 So.3d 237, wherein the court found that because there was no competent evidence introduced at the hearing that the defendant was the same person who was convicted of two previous felonies, counsel’s stipulation that the defendant was a third felony offender without prior advisement of the defendant’s right and without a properly executed waiver of rights form constituted reversible error. In Common, the trial court informed the defendant of his right to a hearing, but did not inform him of his right to remain silent.
Unlike Common, in this matter the State offered competent evidence proving the validity of the prior guilty plea in Texas. Also, the details of the conviction provided by counsel corresponded with the evidence offered by the State.
In another case that appears more on point, the Fifth Circuit reversed the defendant’s adjudication and sentence as a multiple offender during its errors |13patent review of his case.[10] State v. Brown, 10-238 (La.App. 5 Cir. 6/29/11), 71 So.3d 1069. The court summarized its ruling as follows:
Generally, a trial court’s failure to advise the defendant of his right to a hearing and his right to remain silent is considered harmless error, when the defendant’s multiple offender status is established by competent evidence offered by the State at a hearing, rather than by admission of the defendant. In the instant matter, defense counsel stipulated what the testimony of the fingerprint expert would be if he testified, and further stipulated that Brown was the same person convicted of the predicate offenses. A hearing was held on defense counsel’s objections to the evidence on one of the predicate offenses, following which the trial court adjudicated Brown to be a third felony offender.
However, we find that, because Brown was never informed of his statutory rights under La. R.S. *369 15:529.1(D), his acknowledgment or confession of his prior felony convictions is invalid. The stipulation as to the testimony of the fingerprint expert does not change our analysis inasmuch as it, too, was made in the absence of the required advice. Further, although the State presented certified copies of Brown’s predicate convictions, it did not present sufficient proof that he was the same person that pled guilty to those offenses.
Establishing a defendant’s identity as the same person convicted of a prior felony offense may be accomplished by a variety of methods, including the testimony of witnesses, fingerprint analysis by an expert, photographs contained in a duly authenticated record, or evidence of identical driver’s license number, sex, race, and date of birth. However, merely establishing that defendant’s name and that of the person previously convicted are the same is not sufficient evidence of identity under the multiple offender statute. [Citations omitted.]
In viewing State’s Exhibits 1-5, we find that Brown’s identity was not sufficiently established in any other acceptable manner. There was neither witness testimony nor any authenticated photographs introduced into evidence. Most significantly, Brown’s birthdate listed on 11 ¿State’s Exhibit 1 for his underlying conviction is different from the birthdates listed in State’s Exhibits 2-5, for the predicate convictions.
Brown, 10-238 at 15-17, 71 So.3d at 1078-1079 (footnotes omitted).
The Louisiana Supreme Court reversed. The Court found that the omission by the district court in advising Brown of his right was harmless in light of the documentary proof introduced by the State at the hearing that the defendant was the person who pled guilty to the predicate offenses and in light of the defendant’s own admissions in his testimony at trial that corresponded with the State’s proof.[11] State v. Brown, 11-1656 (La.2/10/12), 82 So.3d 1232.
Though no fingerprint analysis was offered in the case at hand, defendant’s date of birth on the underlying conviction, which is reflected as July 23, 1979, is the same as that reflected on the exhibits offered by the State proving the existence of the Texas conviction; his name reflected on the exhibits is Bruce Lee Hayes. The bill of information filed by the State here reflects defendant’s name as Bruce L. Hayes. He is also described as an African-American male in both. Notably, counsel’s qualified admission on defendant’s behalf of the Texas conviction and the details provided by counsel on that conviction correspond with the exhibits offered by the State. We find that the district court properly took into account counsel’s detailed admission along with the State’s exhibits in finding that the evidence was sufficient to prove that defendant was the same person who had pled guilty to the Texas conviction. Therefore, we find no merit in this assignment of error.
1 ^CONCLUSION:
Accordingly, we affirm the convictions and fifteen-year sentence imposed on defendant as a second felony offender on the possession with intent to distribute cocaine. We vacate defendant’s sentence as a second felony offender on the attempted possession of ecstasy conviction, and reinstate the original two-year sentence imposed by the trial court.
*370 CONVICTIONS AFFIRMED; SENTENCES VACATED IN PART; AND RENDERED

. State v. Hayes, unpub., 2010-0638 (La.App. 4 Cir. 5/7/10); State v. Hayes, unpub., 2011-1300 (La.App. 4 Cir. 9/28/11).

. The defendant's family testified that his mother, two sisters and five children resided at the Charbonnet address, but no adult males.

. La. R.S. 15:499 and 15:501 were amended by 2010 La. Acts 693 (eff. 08/15/2010). All references herein are to the versions of the statutes prior to Act 693.

. The notice of intent and criminalist’s report are not part of the appeal record. Although the documents are not part of the record, it appears that the district court also found the notice to have been timely filed by the State.

. Defendant retained counsel on August 7, 2009, subsequent to the preliminary hearing of July 2, 2009.

. The transcript of the second day of trial reflects that counsel filed an oral motion alleging only that he would be ineffective because he did not have ample time to prepare for trial after just receiving the preliminary hearing transcript that day.

.The facts of the case reflect that the defendant pointed a gun toward the victim’s head and fired. The shot missed, and the victim fled. The defendant pursued the victim, firing repeatedly. The victim was shot in her buttock, hip and abdomen, but survived the assault.

. The Court held further that if the sole advantage is that the defendant would have received a lesser sentence under the plea, the court should hold an evidentiary hearing to determine whether the defendant would have accepted the plea. If so, the court may exercise discretion in determining whether the defendant should receive the term offered in the plea, the sentence received at trial, or something in between. However, where the offered guilty plea was for less serious counts, the proper remedy may be to require the prosecution to reoffer the plea. The judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea, or leave the conviction undisturbed. Lafler at 1388-1390. The Court found the latter and remanded the case for further proceedings.

. A review of the record reveals three errors patent. Defendant assigned the first error on appeal, sentencing him as a multiple offender on both counts, which has been addressed infra. The second error, sentence for attempted possession of ecstasy exceeds the statutory maximum, is cured by vacating the sentences. The third error patent, the trial court failed to restrict parole eligibility on first two years of sentence, is corrected pursuant to La. R.S. 15:301.1 A, without the need for remand.

. No recent cases by this Court were found involving the trial court’s failure to advise a defendant of his rights prior to entering a guilty plea to the multiple bill because the discovery of this failure requires more than just an errors patent review of the record.

. The documentary proof identified the defendant by his full name and date of birth.